**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NANTANA ODDO,
Plaintiff-Appellant,

v.

No. 98-2411

JANET RENO, Attorney General of
the United States,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
J. Calvitt Clarke, Jr., Senior District Judge.
(CA-97-1021-2)

Submitted: March 9, 1999

Decided: March 29, 1999

Before ERVIN, WILKINS, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Beverly Yeskolski, HYDER, LOWE & GALSTON, Norfolk, Vir-
ginia, for Appellant. Frank W. Hunger, Assistant Attorney General,
David V. Bernal, Assistant Director, Laura M. Friedman, Office of
Immigration Litigation, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Nantana Oddo ("Ms. Oddo") appeals the judgment of the district court granting summary judgment to the Appellee and upholding the decision of the Immigration and Naturalization Service ("INS") revoking a previously approved visa petition filed on behalf of Ms. Oddo by her employer. Finding no reversible error, we affirm.

Ms. Oddo is a native and citizen of Thailand. Ms. Oddo entered the United States in March 1989 as a nonimmigrant visitor for pleasure with permission to remain until September 13, 1989. On June 2, 1989, she married Pramoth Oddo ("Mr. Oddo"), a native of Thailand and a naturalized United States citizen. On August 3, 1989, Mr. Oddo filed a petition to accord Ms. Oddo a nonquota (immediate relative) status for purposes of immigration based on their marriage. See 8 U.S.C. § 1151(b)(2) (1994). Ms. Oddo filed her first application for permanent resident status based on Mr. Oddo's petition.

An INS investigation into the bona fides of the marriage revealed that Ms. Oddo separated from Mr. Oddo in January or February 1990. In March 1990, Ms. Oddo told an INS investigator that the marriage was having problems. At or about the same time, Mr. Oddo told an investigator that the marriage was arranged by his parents. On March 20, 1990, Mr. Oddo withdrew his visa petition for Ms. Oddo. Based on the withdrawal, the INS denied Ms. Oddo's application for permanent residence. The INS instructed her to depart by May 6, 1990. On May 10, 1990, Mr. Oddo reinstated his petition on behalf of Ms. Oddo. Two weeks later, Ms. Oddo, who had remained in the United States, filed a second application for permanent residence.

Meanwhile, an INS report prepared in March 1990 stated that the marital relationship was questionable because the couple separated. As early as 1990 Mr. Oddo began an affair with another woman,

2

Patricia Reynolds, and fathered two children by her. He and Reynolds began to live together. Ms. Oddo subsequently moved in with Mr. Oddo, Reynolds, and the two children. The investigation also showed that Mr. Oddo and Reynolds held joint title to a car, took a vacation together, and made plans to move to Nashville.

The reinstated petition remained pending until March 20, 1995, when Mr. Oddo withdrew it. On that day, Mr. Oddo was at the INS office and confronted with information collected by an INS investigation into his marriage to Ms. Oddo. Mr. Oddo admitted that the marriage was entered into for the sole purpose of obtaining an immigration benefit on behalf of Ms. Oddo. Subsequently, the INS denied Ms. Oddo's second application for permanent residence on the basis that Mr. Oddo withdrew the petition and advised Ms. Oddo that she was subject to exclusion proceedings.

On November 30, 1995, Ms. Oddo's employer, the Szechuan Garden restaurant, filed a visa petition to accord Ms. Oddo an employment-based immigration preference. The petition was approved on December 20, 1995. A year later, the restaurant was notified that the INS intended to revoke its approval because Ms. Oddo previously sought to be accorded a visa petition by reason of a marriage entered into for purpose of evading the immigration laws.

The restaurant did not reply to the notice. Ms. Oddo filed a response which included several exhibits to support her claim that the marriage was valid. One of the exhibits was an affidavit prepared by Mr. Oddo in which he retracted his prior concession and stated that the marriage was not entered in order to evade immigration laws. He stated that the marriage was arranged by his and Ms. Oddo's parents in accordance with Thai custom. He also stated that he did not meet Ms. Oddo until the marriage. Other exhibits submitted by Ms. Oddo included evidence of a bank account held jointly by Mr. and Ms. Oddo, a joint federal income tax return, a residential lease in the names of Mr. and Ms. Oddo, and a utility bill in both their names.

On February 18, 1997, the INS formally revoked Ms. Oddo's approved employment related visa petition. Szechuan Garden filed a timely notice of appeal, and the appeal was dismissed by the Admin-

istrative Appeals Unit. The district court upheld the INS's revocation of the approved visa petition, and Ms. Oddo timely appealed.

On appeal to this court, Ms. Oddo contends that the decision to revoke the approved visa petition was arbitrary, capricious, and not in accordance with the law. Specifically, she argues that while the evidence may have shown a breakdown of the marriage after its inception, it did not show that the marriage was entered into for the sole purpose of evading immigration laws. She also contends that she was not accorded due process because the INS did not notify her of its intent to deny her 1990 application for permanent residence on the basis that the marriage was entered into for the purpose of evading immigration laws.

The Attorney General may revoke an approved visa petition at any time for "good and sufficient cause." 8 U.S.C.A. § 1155 (West Supp. 1998). Compliance with § 204(c) of the Immigration and Nationality Act satisfies the good and sufficient cause requirement. See Ghaly v. INS, 48 F.3d 1426, 1430-31 (7th Cir. 1995). Section 204(c) states in relevant part:

> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c) (1994). This Court may set aside the INS's action, findings, and conclusions if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994); see also Ghaly , 48 F.3d at 1430-31. This is a highly deferential standard and our review is limited. We will not substitute our judgment for that of the INS. See Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1335 (4th Cir. 1995). The agency action

4

will stand if the record reveals a rational basis for the decision. <u>See</u> <u>Trinity Am. Corp. v. United States EPA</u>, 150 F.3d 389, 395 (4th Cir. 1998); <u>Clevepak Corp. v. United States EPA</u>, 708 F.2d 137, 141 (4th Cir. 1983).

After reviewing the record, we find a rational basis for the INS's decision to revoke the petition. Ms. Oddo previously sought immediate relative status based upon her marriage to Mr. Oddo, a naturalized United States citizen. Furthermore, there was evidence in the record that the marriage was entered into for the purpose of evading immigration laws. Mr. Oddo's statement that the marriage was not valid and was entered into solely for the purpose of having Ms. Oddo obtain immediate relative status is direct evidence of the couple's fraudulent intent at the time of the marriage. In addition, both Mr. and Ms. Oddo attempted to conceal from investigators that they had separated and that Mr. Oddo was involved with another woman. Evidence of such conduct after marriage is relevant so long as it bears a relationship on the couple's intention at the time of the marriage. <u>See</u> <u>Bark v. INS</u>, 511 F.2d 1200, 1202 (9th Cir. 1975). Thus, we find it was reasonable for the INS to conclude that the marriage was not entered into with the purpose of the two parties establishing a life together and assuming marital duties and obligations. <u>See Lutwak v. United States</u>, 344 U.S. 604, 611 (1953); <u>see also Bark</u>, 511 F.2d at 1201-02 (holding that marriage is sham if couple does not intend to establish a life together at the time of marriage). Because we find sufficient supporting evidence, the INS's decision was not arbitrary, capricious, or an abuse of discretion.

Ms. Oddo's due process claim is without merit. INS regulations require that a party be given notice of intent to deny a petition for the purpose of informing the party of the right to appeal and the reasons for the denial. <u>See</u> 8 C.F.R. § 204.2(a)(3) (1998). Ms. Oddo's 1990 application for permanent residence was based upon Mr. Oddo's petition filed on her behalf. When he withdrew the petition in 1995, there was no basis upon which to grant Ms. Oddo's application. The application was denied because Mr. Oddo withdrew his petition, not because of any findings made by the INS regarding the marriage. Furthermore, Ms. Oddo was provided with notice that the INS intended to revoke the approved visa petition. She was given an opportunity to appeal the decision and to present additional evidence in support of

5

her claim. Thus, we find that Ms. Oddo was given all the process she was due.

We affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

<u>AFFIRMED</u>

6